Andrew G. Jubinsky, *admitted pro hac vice*
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Timothy A. Daniels, *admitted pro hac vice*
Texas Bar No. 05375190
tim.daniels@figdav.com
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas  75202
Telephone: 214.939.2000
Facsimile: 214.939.2090

Noah M. Hoagland (#11400)
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355

*Attorneys for Defendant LifeSecure Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARK SCOTT and MERRILEE SCOTT, <br><br> Plaintiffs, <br><br> v. <br><br> LIFESECURE INSURANCE COMPANY, <br><br> Defendant. | **DEFENDANT'S RULE 26(a)(2) EXPERT DISCLOSURE** <br><br><br> CASE NO. 2:15-cv-00197-CW-DBP <br> Magistrate Judge Evelyn J. Furse |

Pursuant to Fed. R. Civ. P. 26(a)(2), Defendant LifeSecure Insurance Company ("Defendant") designates and discloses the following expert witness who may be called upon to testify at trial or otherwise:

**APP. Ex. 7**

R. Bryan Tilden
Tilden and Associates
52 Redgate Road
Pittsboro, NC 27312

Mr. Tilden is a principal of Tilden and Associates who has over 42 years experience in the insurance and risk management industry. Mr. Tilden's opinions are set forth in the attached expert report, along with supporting materials pursuant to Fed. R. Civ. P. 26(a)(2)(B).

Mr. Tilden may be asked to respond to testimony of certain witness offered at the time of trial or in deposition, including, but not limited to, the testimony of the Plaintiffs. Defendant reserves the right to designate any and other expert witnesses for the purposes of rebuttal depending on additional reports provided by the Plaintiffs. Defendant further reserves the right to supplement and amend the designations up to an including the time of trial, expressly reserves the right to withdraw any expert at any point.

Dated: February 18, 2016

Respectfully submitted,

By:

Andrew G. Jubinsky, *admitted pro hac vice*
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Timothy A. Daniels, *admitted pro hac vice*
Texas Bar No. 05375190
tim.daniels@figdav.com
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: 214.939.2000
Facsimile: 214. 939.2090

Noah M. Hoagland
NHoagland@sautah.com
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached Defendant's Rule 26(a)(2) Disclosure was served upon the parties listed below via U.S. mail on the 18th day of February, 2016.

J. Kevin West
kwest@parsonsbehle.com
Nicholas U. Frandsen
nfrandsen@parsonsbehle.com
Parsons Behle & Latimer
201 South Main St., Suite 1800
Salt Lake City, Utah 84111-2218
*Attorneys for Plaintiffs*

Timothy A. Daniels

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK SCOTT, an individual; and MERILEE SCOTT, and individual | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) NO.: 2:15-cv-00197-CW-DBP ) |
| LIFESECURE INSURANCE COMPANY, a Michigan Corporation, | ) Judge Clark Waddoups ) ) |
| Defendant. | ) ) |

Prepared by R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
February 18, 2016

# PREFACE

I, R. Bryan Tilden, have been engaged by counsel for LifeSecure Insurance Company ("LifeSecure") to review certain materials relating to the non-renewal of Policy Number PH02118 ("Policy") and to, in summary, provide an opinion (a) relating to the features and benefits of the Policy, all as described in detail in this report and (b) relating to a proper calculation of the Plaintiffs' damages, if any, caused by the non-renewal of the Policy.

I have over 42 years' experience in the insurance and risk management industry as an author, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner and consultant for both insureds and insurers. I have placed business, as a retail and surplus lines broker representing the insured, in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British and European insurance companies. I have handled claims, progressing from small claims to claims over $1,000,000. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian and European companies in the drafting, underwriting and placement of insurance policies, both marine and non-marine, and in the adjustment of losses, including life and health insurance. I teach the construction, drafting, underwriting, adjusting and analysis of insurance policies throughout the United States, Canada, the Caribbean, Bermuda and the European Union. I have testified in the United States and London regarding the above subject matter. I am familiar with the custom and practices of the international insurance marketplace, including the London, European, Caribbean, Canadian, Bermudian and United States markets.

My curriculum vitae along with a list of publications and cases I have testified in as an expert in the last five years is attached hereto as *Exhibit A*. The facts and data I considered in forming my opinions expressed in this report are listed in the documents provided section of this

2

report.  My billing rate to LifeSecure for study and testimony in this matter is $250 an hour.[1]  The

opinions expressed herein are to a reasonable degree of professional certainty.  *I reserve the right*

*to amend or supplement this report should any additional discovery occur*.

# DOCUMENTS PROVIDED

1. Complaint;

2. Answer;

3. LifeSecure Responses to Discovery;

4. Scott Responses to Discovery;

5. LifeSecure Supplemental Responses to Discovery;

6. LifeSecure Responses to Second Set of Discovery;

7. LifeSecure Initial Disclosures;

8. Scott Initial Disclosures;

9. Scott 00001 – 00309;

10. LifeSecure 00001 – 00114;

11. Deposition of Mark Scott and exhibits;

12. Deposition of Merilee Scott and exhibits;

13. Deposition of Sam Houk and exhibits; and

14. HBE Forensics LLC Expert Report.

---

[1] No portion of my compensation is dependent upon the result of this litigation.

# HISTORY

The original policy was issued to Plaintiffs February 10, 1987.  It was non-renewed March 10, 2014, after initial notice of the non-renewal was given on October 30, 2013.  The reason for the non-renewal was that the contract did not comply with the requirements of the Affordable Care Act (ACA).  Plaintiffs seek past premiums of at least $60,000, despite the fact that they received $226,006.02 in benefits through 2010.[2]  In addition, the difference in premium and out-of-pocket costs between the LifeSecure policy and the alternative ACA compliant policy purchased by the Plaintiffs is being sought from LifeSecure until both Plaintiffs reach 65.

# OPINIONS

I.   LifeSecure followed the custom and practice of the insurance industry in deciding not to make changes required to make "grandfathered" 1987 policy ACA compliant.

Insurance is based on the law of large numbers.  This mathematical principle states that as the number of similar but independent exposure units increases, the relative accuracy of predictions about future outcomes (losses) also increases.  The record shows that 22 policies were in effect at the time the decision was made to non-renew the health insurance policies instead of revising the policies to comply with ACA mandated provisions for grandfathered policies.  There were only two policies in Utah, the jurisdiction involved in this litigation.  While the record shows that some states, including Utah, extended the date to make existing ACA policies compliant, other jurisdictions did not, thereby reducing the already minuscule number of policies in the risk pool.

Empirical probability (a posteriori probability) is based on actual experience through historical data or from the observation of facts.  As the 1987 Policy provisions did not comply with

---

[2] Houk Exhibit #19.

4

the ACA requirements which materially altered coverages under health policies, this application would be inappropriate. In other words, even attempting to use data regarding other health insurance policies, to the extent it could be obtained, would not provide empirical data to allow for a reasonable setting of future rates since essentially all existing polices would be ACA compliant, and therefore materially different in benefit structure.

Theoretical probability is based on theoretical principals rather than actual experience. Due to the unchanging nature of coin tosses or dice throws, in some situations it may be preferable to empirical probability. Theoretical probability are not applicable or available in most situations that insurance professionals analyze, particularly the analysis of potential risk. As a result, empirical probability must be used.

Insurance policies are designed and priced based on the following six characteristics:

1. Pure risk – Involves pure risk, not speculative risk.

2. Fortuitous losses – Subject to fortuitous loss from the insured's standpoint.

3. Definite and measurable – Subject to losses that are definite in time, cause, and location that are measurable.

4. Large number of similar exposure units – One of a large number of similar exposure units.

5. Independent and not catastrophic – Not subject to a loss that would simultaneously affect many other similar loss exposures; not catastrophic.

6. Affordable – Premiums that are economically feasible.

Here, with a Utah exposure base of two, the principle of a large number of exposure units is missing in order for the risk to be priced according to accepted reasonable practice. Further, the affordability of premiums comes into question. Even if the policies were revised to the minimum requirements of the ACA grandfather provisions, there would have to be a premium adjustment approved by the Utah Department of Insurance (as well as other applicable Insurance Departments), and because of the small number of policies, there would be no data on which such rate adjustment could be based.

Of the types of insurance regulation, rate regulation receives the most public attention. The three major goals of rate regulation are to ensure that the rates are adequate, not excessive, and not unfairly discriminatory. Adequate means that the premium should be high enough to pay all claims and expenses for that type of insurance in order to maintain insurer insolvency. Not excessive means that the insurer should not earn excessive or unreasonable profits. Regulators have considerable latitude and discretion in determining whether rates are excessive. Not unfairly discriminatory refers to fair and consistent discrimination, the basis of insurance rating. Not every exposure is the same and insurers may typically take into account differences among insureds that effect the risk.

LifeSecure would have followed the above principles of insurance in making the decision not to revise the policies to comply with the ACA mandates for grandfathered policies. If they had revised the policies, based on two policies in Utah, there would be no empirical data to present to the Utah Department of Insurance to establish the new premium based on the new benefits. The uncertainty of future losses for a small number of policies would require enough collected

premium for the two policies to cover future losses, expenses, and a reasonable profit for LifeSecure.

Market price includes spread of risk in the rate making function. With a large number of exposure units, the risk of catastrophic loss is mitigated. Not all policy holders would contract a dread disease or sustain an accident in any particular policy period. Only a portion would have a large loss, but the spread of risk stabilizes the market price. With two policies involved, the pricing has to be higher than market price due to the lack of spread of risk. Because of the risk pool of two policies in Utah, more likely than not the new premium would not be approved by the Utah regulators, as the premium would have to be higher than market price due to the lack of a large number of exposure units and the uncertainty in the risk described above.

The ACA has established more rate regulation in addition to state regulation: Rate Review and the 80/20 rule. Rate Review protects policyholders from unreasonable rate increases. Insurance companies must now publicly explain any rate increase of 10% or more before raising the premium.[3] The 80/20 Rule generally requires insurance companies to spend at least 80% of the money they take in from premiums on health care costs and quality improvement activities. The other 20% can go to administrative, overhead, and marketing costs.[4]

---

[3] This does not apply to grandfathered plans.
[4] Insurance companies selling to large groups must spend at least 85% of premiums on care and quality improvement.

II.    HBE Forensics LLC analysis failed to consider, among other things, the benefit
level changes when calculating damages.

The damage calculations performed by HBE did not take account or adjust for the increased
benefits provided by either a Bronze or Silver plan.  HBE did not indicate which Bronze plan was
utilized for the pricing model.  The Plaintiffs obtained a Silver Plan, and presumably the Bronze
Plan was included by HBE for comparison purposes.  The following analysis indicates the plan
number utilized, with the Silver plan the one procured by the Plaintiffs:

| | LifeSecure | Bronze Plan S40A1997 | Silver Plan S302018 |
|---|---|---|---|
| Maximum Benefit | $1,000,000 | Unlimited | Unlimited |
| Deductible – Accident | $50 | $3,500 | $3,500 |
| Deductible – Sickness 2015 | $500 | $3,500 | $3,500 |
| Deductible – Sickness 2016 | $500 | $4,500 | $3,500 |
| Deductible –Emergency Room | $50 | $500 co-payment after deductible | 100% after deductible |
| Co-payments | 20%[5] | 30% | 0% |
| Medical, Surgical, Hospice, Emergency Admissions | $1,000 day maximum | 70% after deductible | 100% after deductible |
| Anesthesia | 30% of surgical charge | 70% after deductible | 100% after deductible |
| Mammography | None | Covered[6] | Covered[7] |
| Maternity | None | 70% after deductible | 100% after deductible |
| Skilled Nursing Facility | None | 70% after deductible | 100% after deductible[8] |
| Rehab Therapy | None | $40 co-payment after deductible | 100% after deductible[9] |
| Sick Office Visits | After Deductible | $25 co-pay after deductible | 100% after deductible |
| Preventive Care | None | Covered[10] | Covered[11] |

[5] After deductible, when co-payments reach $4,500, then 100% up to policy maximums.
[6] See Exhibit B.
[7] Ibid.
[8] 60 days per year.
[9] 40 days per year.
[10] See Exhibit B.
[11] Ibid.

8

|  | LifeSecure | Bronze Plan S40A1997 | Silver Plan S302018 |
|---|---|---|---|
| Tier I Drugs | After Deductible[12] | $10 per prescription | 100% after deductible |
| Tier II Drugs | After Deductible | 30% co-pay after deductible | 100% after deductible |
| Tier III Drugs | After Deductible | 50% co-pay after deductible | 100% after deductible |
| Allergy Tests | None | $40 co-pay after deductible | 100% after deductible |
| Self-inflicted Injury | None | 70% after deductible | 100% after deductible |
| Infertility | None | $1,500 year[13] | 100% after deductible[14] |
| Obesity Surgery | None | Not covered | 100% after deductible |
| Foot Care | None | 70% after deductible | 100% after deductible |
| Acts of Aggression | None | 70% after deductible | 100% after deductible |
| Pediatric Eye Exam | None | $40 co-pay after deductible | 100% after deductible |
| Pediatric Glasses & Contact Lenses | None | 70% after deductible | 100% after deductible |
| Chiropractic | $300 year | Not covered | 100% after deductible[15] |
| Drug & Alcohol Treatment | $1,000 year | $25 co-pay after deductible | 100% after deductible |
| Mental Health | 50%[16] | 70% after deductible | 100% after deductible |
| TMJ Services | None | $2,000 lifetime | $2,000 lifetime |
| Motorcycle Injuries | $10,000 occurrence | 70% after deductible | 100% after deductible |
| Organ Transplant | $25,000 | 70% after deductible | 100% after deductible |
| Ambulance | 75 mile limit | 70% after deductible | 100% after deductible |

As the table above demonstrates, the coverage procured by the Plaintiffs had greater benefits than the LifeSecure policy. HBE did not account for the benefit level change in its analysis. As an example, both the Silver and Bronze plans cover preventive care at 100% with no deductible. Based on this benefit, Mrs. Scott obtained a mammogram that was fully covered as

---

[12] Accident and sickness only, no preventive.
[13] $1,500 per year, $5,000 lifetime.
[14] $1,500 per year, $5,000 lifetime.
[15] 15 visits per year
[16] $1,500 year, $10,000 lifetime maximum.

required by the ACA.  Attached as *Exhibit B* is a listing of preventive care benefits available under the Plaintiff's current policy, with no out-of-pocket cost to the Plaintiffs.

HBE also failed to account for the income tax implications of the transaction.  Plaintiffs purchased the LifeSecure policy with after-tax dollars.  In using after-tax dollars, the deductibility would be the portion of medical expenses that exceeded 7½ % of their adjusted gross income. HBE acknowledged that the current Silver Plan was purchased by the Plaintiff's wholly owned company, and the record reflects the company pays the premium.[17]  Purchasing health insurance through the company would utilize pre-tax dollars since the payment would be an expense to the company.  HBE stated "I assumed that insurance purchased through the company is equivalent to the Scott's purchasing the insurance individually".  HBE failed to adjust the claimed damages by the income tax implications, thereby overstating and inflating the damages. [18]

HBE also failed to adjust the damages for the health savings account (HSA).  While the damage calculations did not include the contribution to the HSA, there is a significant income tax advantage in utilizing a HSA.  Generally, any contributions to the HSA can be made with pre-tax dollars or such contributions are deductible.  The benefits statement in this case indicates that the business made the contribution, and is therefore not taxed as earned income to the Plaintiffs.  The LifeSecure product was not designed for nor compliant with the HSA requirements as it is not a high deductible plan.  Failing to make this adjustment is another instance where the claimed

---

[17] *See* Scott000075.
[18] HBE also failed to indicate how premium paid by the company, which is a separate independent entity, results in damages to the individual Plaintiffs.

damages are inflated and overstated since Plaintiffs can pay all out-of-pocket costs assumed by HBE with pre-tax dollars under their current plan.

HBE, in their damages report, further stated that the maximum out-of-pocket would be $1,400 per year.  Only one sickness deductible was taken per year of $500.  This does not account for the internal limits in the LifeSecure policy, such as $1,000 per day for hospital expenses, and therefore the analysis of out-of-pocket costs is totally speculative.  If hospitalization had occurred, then the out-of-pocket cost under the LifeSecure policy would be significantly higher than under the Plaintiffs' current coverage.  Becker's Hospital CFO indicates that in Utah, the average cost per inpatient day in 2015 was $2,843.[19]  This does not include doctor or ancillary charges.  The Kaiser Family Foundation reports that the average per capita spending for health care in Utah in 2009 was $5,031.[20]

As previously discussed, the ACA requires at least 80% of the premium collected be utilized for payment of losses.  Plaintiffs complain that they have to pay a higher premium, but chose to ignore the benefit changes.  The Silver Plan they procured does have a higher premium, but includes greater benefits.  Because of the 80% loss ratio requirement under the ACA, one can deduce the Silver Plan premium is commiserate with the increased benefits, and would be representative of market price in relation to the benefit level.  Again, HBE in their damages report does not take into account the benefit level change in this highly regulated ACA compliant product, and only desires to focus on the change in premium.

---

[19] http://www.beckershospitalreview.com/finance/average-cost-per-inpatient-day-across-50-states.html.
[20] http://kff.org/other/state-indicator/health-spending-per-capita/?state=UT.

The HBE report is deficient for the above reasons and most critically fails to reasonably attempt to calculate actual damages since the differential in benefits is not addressed. The report is based on an assumption that no services limited or excluded under LifeSecure would occur, even though paid claims of $226,006.02 through 2010 were made by under the Policy, highlighting that Plaintiffs' had significant claims in the past.  Further, the HBE report simply assumes the premium under the LifeSecure policy would remain the same even though, in order to remain in force, the policy would have to be changed to add the additional benefits required by the ACA.  This also raises a final point, an ACA compliant policy would not be the same policy originally issued to the Plaintiffs, as it would be changed in material respects.

R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC

12

*Curriculum Vitae*
*of*
### R. Bryan Tilden
526 Red Gate Road
Pittsboro, North Carolina 27312-7934
*Office:* 919.542.1042 • *Fax:* 919.542.6255 • *E-mail:* tilden@mindspring.com

**EDUCATION:**

**Senior Claim Law Associate,** 2008
AMERICAN EDUCATIONAL INSTITUTE, INC.
Basking Ridge, New Jersey

**Chartered Financial Consultant,** 1983
THE AMERICAN COLLEGE
Bryn Mawr, Pennsylvania

**Associate in Loss Control Management,** 1983
INSURANCE INSTITUTE OF AMERICA
Malvern, Pennsylvania

**Associate in Risk Management,** 1982
INSURANCE INSTITUTE OF AMERICA
Malvern, Pennsylvania

**Chartered Life Underwriter,** 1982
THE AMERICAN COLLEGE
Bryn Mawr, Pennsylvania

**Chartered Property Casualty Underwriter,** 1980
THE AMERICAN INSTITUTE FOR PROPERTY AND LIABILITY
UNDERWRITERS
Malvern, Pennsylvania

**Certified Insurance Counselor,** 1978
SOCIETY OF CERTIFIED INSURANCE COUNSELORS
Austin, Texas

**HONORS/ACTIVITIES:**

Continuing Professional Development, Society of Chartered Property
Casualty Underwriters, 2013 - 2015

Grading Panel Member, The American Institute for Property and
Liability Underwriters

Grading Panel Member, Insurance Institute of America

National Faculty Member, Society of Certified Insurance Counselors

Faculty, ACORD Power of Change Workshop, 1995 to present

Faculty, Independent Insurance Agents Virtual University,
    commentator to ISO, AAIS and ACORD

Ernest F. Young Education Award, 1988

North Carolina Independent Agent of the Year, 1989

Frequent contributor the *The John Liner Letter*
    articles on Business Income, CGL, Auto, Risk Management

Reviewer, various CPCU and Insurance Institute textbooks

Exhibit A

*R. BRYAN TILDEN*          *PAGE 2*

**MEMBERSHIPS:**          International Association of Arson Investigators
                         Society of Certified Insurance Counselors
                         Society of Chartered Property Casualty Underwriters
                         Society of Claims Law Associates
                         Society of Financial Service Professionals

**LICENSES:**            Property and Liability Agent, North Carolina, New Jersey
                         Life and Health Agent, North Carolina, New Jersey
                         Medicare Supplement and Long Term Care Agent, North Carolina

**EXPERIENCE:**          April 1997 to Present
                         **Training and Consulting**
                         Tilden & Associates
                         Pittsboro, North Carolina

                         September 1995 to March 1997
                         **Director of Technical Affairs**
                         Independent Insurance Agents of North Carolina, Inc.
                         Raleigh, North Carolina

                         March 1990 to August 1995
                         **Director of Education**
                         Independent Insurance Agents of North Carolina, Inc.
                         Raleigh, North Carolina

                         September 1983 to March 1990
                         **Account Executive**
                         Chapel Hill Insurance Agency, Inc.
                         Chapel Hill, North Carolina

                         September 1979 to July 1983
                         **Vice President**
                         Thomas Rutherfoord, Inc.
                         Roanoke, Virginia

                         December 1978 to September 1979
                         **Account Executive**
                         Marsh & McLennan, Inc.
                         Washington, DC

                         July 1974 to December 1978
                         **Account Executive**
                         Herb Holland Company, Inc.
                         Chapel Hill, North Carolina

**PUBLICATIONS:**        The CPCU Society. "A Guide to the CGL Aggregate Limits",
                         http://www.cpcusociety.org/learning/campus/how.shtml , 1999
                         The CPCU Society, "A Guide to the Motor Carrier Act",
                         http://www.cpcusociety.org/learning/campus/how.shtml. 1999
                         The CPCU Society, "A Guide to Value Reporting Form",
                         http://www.cpcusociety.org/learning/campus/how.shtml. 1999

R. BRYAN TILDEN          PAGE 3

R. Bryan Tilden, *1999 Business Auto Policy, Changes and Issues* (Albany: Professional Insurance Agents, 1999)

----, *2000 Commercial Property Changes* (Malvern: The CPCU Society, 2000)

----, *2000 Homeowners Policy Changes* (Malvern: The CPCU Society, 2000)

----, *2001 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2001)

----, *2001 Business Automobile Policy Changes* (Pittsboro, NC: Tilden and Associates, 2001)

----, *2002 Commercial Property Changes* (Malvern: The CPCU Society, 2002)

----, *2004 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2004)

----, *2007 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2007)

---- *2008 Commercial Property Changes* (Malvern: The CPCU Society, 2008)

----, *2010 Automobile Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2011 Homeowners Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2012 Commercial Property Policy Changes* (Malvern: The CPCU Society, 2013)

----, *2013 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2013)

----, *Additional Insured* (Austin: Society of Certified Insurance Counselors, Inc., 1996, 2005, 2013; Malvern: The CPCU Society, 1999, 2001, 2004, 2005, 2013)

----, *Advanced Business Income* (Malvern: The CPCU Society, 1990 – 2013)

----, *Advanced Inland Marine* (Malvern: The CPCU Society, 2000)

----, *Advanced Pollution Liability* (Malvern: The CPCU Society, 1999 - 2012)

----, *Arson and the Insurance Contract* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 2004, 2012)

----, *Bonus Life and Non-Qualified Deferred Compensation Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Budgeting* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1995)

R. Bryan Tilden and Donald Malecki, *Builders Risk, Wrap-Ups and Course of Construction* (Malvern.  The CPCU Society, 2006)

R, Bryan Tilden, *Business Automobile Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1997, 1999, 2002, 2004, 2005, 2006, 2010, 2013)

*R. BRYAN TILDEN*     PAGE 4

----, *Business Owner's Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990 – 2002, 2010, 2013)

----, *Claims Handling* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Closing Gaps in Property Insurance* (Malvern: The CPCU Society, 1999, 2007, 2015)

----, *Commercial Account, The* (Malvern: The CPCU Society, 1999, 2001, 2005)

----, *Commercial Crime Program* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1991, 1992, 1999, 2000, 2006; Malvern: The CPCU Society, 2000, 2006, 2009, 2013)

----, *Commercial General Liability Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1992, 1994, 1996, 1997, 1998, 1999, 2001, 2004, 2007, 2013)

----, *Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Commercial Property Causes of Loss Forms* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Contract Bonds* (Pittsboro, NC: Tilden and Associates, 1999)

R. Bryan Tilden and Donald Malecki, *Contractual Risk Transfer* (Malvern. The CPCU Society, 2005)

R. Bryan Tilden, *Director's and Officer's Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1997; 2002 Malvern: The CPCU Society, 1998, 2000, 2002)

----, *Disability Income and Long Term Care Insurance* (Pittsboro, NC: Tilden and Associates, 2006)

----, *Employee Leasing – The New CGL.* Counselor C93 #6 December (1993): 1-4

----, *Employment Related Practices* (Pittsboro, NC: Tilden and Associates, 1999, 2011)

----, *Endorsements to the Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Essentials of Legal Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1995)

----, *Essentials of Life Insurance* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Estate Planning* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Estate Planning Techniques, Gifts, Trusts and Family Limited Partnerships* (Pittsboro, NC: Tilden and Associates, 2000)

R. Bryan Tilden and Donald Malecki, *Evolution of the CGL,* (Malvern. The CPCU Society, 2007)

R. Bryan Tilden, *Excess Liability and Commercial Umbrella Policies* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1995, 1997, 2013)

*R. BRYAN TILDEN*          PAGE 5

----, *Flood Insurance*, (Austin: Society of Certified Insurance Counselors, Inc., 1998)

----, *Garage Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1998, 2006)

----, *Hidden Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1995, 1997, 2000; Malvern: The CPCU Society, 1998, 2004, 2010, 2013)

----, *Homeowner's Policy* (Pittsboro, NC: Tilden and Associates, 1998, 2001, 2011)

----, *Homeowner's Tricks and Traps* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1993, 1997, 2001, 2013)

----, *How to Determine the Financial Stability of an Insurance Company* Agents Journal Spring (1985) 18 - 19

----, *Human Resources* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1996)

----, *Insurance Fraud* (Pittsboro, NC: Tilden and Associates, 2001)

----, *Insurance Statute and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Insuring Contractors* (Malvern: The CPCU Society, 1998, 1999, 2004, 2007, 2013)

----, *Insuring Defective Construction* (Malvern: The CPCU Society, 2002, 2004, 2007, 2013; Austin: Society of Certified Insurance Counselors, 2002, 2004, 2007, 2013)

----, *Insuring the E-Commerce Account* (Malvern: The CPCU Society, 2000 – 2013)

----, *Insuring the In Home Business* (Austin: Society of Certified Insurance Counselors, 1998)

----, *Insurance Valuation Problems* (Malvern: The CPCU Society, 1997 – 2013)

----, "It's a Crime Not to Insure! Use New Crime Forms for the Best Coverage," *Resources* (The National Alliance for Insurance Education & Research), (Spring 2001), pp. 10-13.

----, *Law and the Life Insurance Contract* (Pittsboro, NC: Tilden and Associates, 2002)

----, *Leased Properties Exposures* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1997, 2005; Malvern: The CPCU Society, 1998, 2001, 2005, 2013)

----, *Liability Issues and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998)

R. Bryan Tilden and Donald Malecki, *Malecki and Tilden on the CGL,* (Malvern. The CPCU Society, 2003, 2004, 2005)

R. Bryan Tilden, *Medicare Supplement and Long Term Care* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991, 1992)

*R. BRYAN TILDEN*          PAGE 6

----, *Mergers, Acquisitions and Joint Ventures* (Malvern:  The CPCU Society, 2001; Austin: Society of Certified Insurance Counselors, Inc., 2002, 2013)

----, *More Personal Lines Questions and Answers* (Pittsboro, NC: Tilden and Associates, 1997)

----, *N.C. Insurance Statutes and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Personal Auto Policy* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1990, 1993)

----, *Personal Auto Policy* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Personal Lines Questions and Answers* (Malvern: The CPCU Society, 1997, 1998, 2012)

----, *Personal Lines, Troublesome Problem Areas* (Indianapolis: Independent Insurance Agents of Indiana, 1997, 1998)

----, *Pollution Liability Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1998, 2012)

----, *Pollution and Environmental Liability Coverages* (Malvern: The CPCU Society, 1999, 2012)

R. Bryan Tilden and John P. Young, *Pre-Licensing Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1988, 1993)

R. Bryan Tilden, *Professional Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1994, 1996, 1998)

----, *Problems and Solutions in Buy-Sell Agreements* (Pittsboro, NC: Tilden and Associates, 1998).

----, *Products and Completed Operations* (Malvern: The CPCU Society, 1999)

----, *Properly Insuring Churches, Clubs, Civic Groups and Other Not-For-Profit Organizations* (Austin: Society of Certified Insurance Counselors, Inc., 1991, 1998, 2001)

----, *Property & Liability Innovations and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 1999, 2001)

----, "Puzzled About Commercial Auto?" *Resources* (The National Alliance for Insurance Education & Research), (Fall/Winter 2001), pp. 8-9.

----, *Rental Car Exposures and Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1990, 1992, 1999)

----, *Shared Ownership of Property* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1990, 2001)

----, *Small Employer Group Benefits* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Split Dollar Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Time Element Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1996, 2001, 2008, 2012)

*R. BRYAN TILDEN*                PAGE 7

----, *Tips, Tricks and Traps of the CGL* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1998, 1999, 2012; Malvern: The CPCU Society, 2000, 2012)

----, *Toxic Mold, Where Is The Coverage?* (Malvern: The CPCU Society, 2003, 2004, 2008, 2010, 2013)

----, *Umbrella and Excess Liability* (Malvern, The CPCU Society, 2004, 2013)

----, *Underwriting Workers Compensation* (Pittsboro, NC: Tilden and Associates, 2003)

----, *Utilizing the New Commercial Coverages* (Albany: Professional Insurance Agents, 2003)

----, *Will the Policy Pay for Rebuilding?* Professional Agent February 1998: 24 - 27

----, *Workers' Compensation* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1997, 2012)

----, *Workers' Compensation: Treating the Exposure* (Malvern: The CPCU Society, 2000)

----, *Workers' Compensation: Underwriting* (Malvern: The CPCU Society, 2000)

**CASES PAST 4 YEARS:**   *Colony Insurance Company v. Charles Peterson; Evergreen Composite Technology, LLC, and Randolph Bank and Trust Company,* 1:10-cv-581, United States District Court for the Middle District of North Carolina, Greensboro Division.

*Millennium Inorganic Chemicals Ltd. and Cristal Inorganic Chemicals Limited v. National Union Fire Insurance Company of Pittsburgh, PA, ACE American Insurance Company, and Marsh USA, Inc.,* 1:09-cv-01893-ELH, United States District Court for the District of Maryland, Northern Division.

*TIC – The Industrial Company Wyoming, Inc. v. Factory Mutual Insurance Company, and IMA of Kansas, Inc.,* 4:10cv3153, United States District Court for the District of Nebraska.

*Colony National Insurance Company v. SLB Toys USA, Inc. et al,* CV11-04950 (PJWx), United States District Court for the Central District of California, Western Division.

*Monte Dale Hargrave v. United Services Automobile Association,* 11-CVS-2512, Superior Court for the County of Durham, North Carolina.

*Harleysville Mutual Insurance Company, et al v. Lighthouse-Keuning Insurance Group,* Arbitration Under the Pennsylvania Uniform Arbitration Act 42 Pa.C.S.A. § 7301 et seq.

*Paradigm Consultants, Ltd., v. Builders Mutual Insurance Co., et al,* 11-CVS-673, Superior Court for the County of Watauga, North Carolina.

R. BRYAN TILDEN               PAGE 8

*Norma Jo Trulock Thomas, Administratrix v. Physicians Choice, LLC, and Benchmark Insurance Company,* 09-C-1149, Circuit Court of Kanawha County, West Virginia.

*Charles B. Campbell, III, M.D. et al v. BB&T Insurance Services, Inc., d/b/a/ Blue Ridge Burke Agency, et al,* 11 CvS 2945, Superior Court for the County of Forsyth, North Carolina.

*Lawrence D. Guessford v. Pennsylvania National Mutual Casualty Insurance Company,* 1:12-cv-00360-JAB-LPA, United States District Court for the Middle District of North Carolina.

*C. B. Fleet Company, Inc. v. Colony Specialty Insurance Company,* 1:11-cv-00375, United States District Court for the Northern District of Ohio, Eastern Division.

*Opry Mills Mall, Ltd., et al v. Arch Insurance Company, et al,* 10-1504-IV, Chancery Court for Davidson County, Tennessee.

*Hospitality Enterprises, Inc., et al, v. Westchester Surplus Lines Insurance Company, et al,* 10-12413-D, Civil District Court for the Parish of Orleans, Louisiana.

*Menno Pennink, et al v. Underwriters at Lloyds, et al,* 11-CVS-05555, Superior Court for the County of Durham, North Carolina.

*Brent and Brunette Myers v. First Citizens Bank & Trust Company,* 12 CVS 08569, Superior Court for the County of Wake, North Carolina.

*Orleans Parish School Board, et al v. Lexington Insurance Company and RSUI Indemnity Company, et al,* 2006-7342, Division L, Section 6, Civil District Court for the Parish of Orleans, State of Louisiana.

*Otto Industries North America, Inc., v. The Phoenix Insurance Company,* 3:12-CV-717, United States District Court for the Western District of North Carolina, Charlotte Division.

*Pleasant Valley Baptist Church v. Church Mutual, et. al.,* 12-26503-CZ, Circuit Court for the County of Livingston, Michigan.

*MacMurray College v. Educational & Institutional Ins. Administrators, Inc.,* Arbitration No. 51 195 Y 01446 12, American Arbitration Association, Chicago, Illinois.

*Rolf's Patisserie, Inc. v. The Rockwood Company,* 12-L-1063, County Department, Law Division, Circuit Court of Cook County, Illinois.

*Loretta A. Scott v. Portell, et al,* 11SL-CC00239, Circuit Court for the County of St. Louis, Missouri.

*Parkers Farm Acquisition, LLC, v. Associated Insurance Agents, Inc., and Jeffrey R. Mass,* 27-CV-13-12678, District Court for the Fourth Judicial District, County Of Hennepin, Minnesota.

*R. BRYAN TILDEN*          PAGE 9

*Philway Products, Inc. v. Berkley Mid-Atlantic, et al,* CV-2012-12-6749, Summit County Court of Common Pleas, Ohio.

*Colony National Insurance Company v. Sorenson Medical Inc., et al,* 2:10-cv-74-WOB, United States District Court for the Eastern District of Kentucky, Northern Division at Covington.

*Bowlers Alley, Inc. d/b/a Eastland Bowling Center v. The Cincinnati Insurance Company,* 2:13-cv-13804-PDB-MJH, United States District Court for the Eastern District of Michigan, Southern Division.

*Insurance Commissioner of Puerto Rico v. Guardian Insurance Company, et al,* Case Number CM-2014-40E, In The Office of the Puerto Rico Insurance Commissioner.

*Waldorf Condominium Association, Inc. v. Lexington Insurance Company, et al,* Docket L2877-13, Law Division Ocean County, Superior Court of New Jersey.

*James Bosek, et al v. Auto-Owners Insurance Company and Larson Insurance Services, Inc.,* 21-CV-12-1821, County of Douglas District Court, Seventh Judicial District, State of Minnesota.

*Frank L. Connor v. State Farm Fire and Casualty Company,* 4:14-cv-00790, United States District Court, Western District of Missouri.

*Kelly Schofield, et al, v. Argonaut Insurance Company, et al,* 14-cv-103F, United States District Court for the District of Wyoming.

*Stacey Allen Volden v. Monson & Company, Inc., et al,* 120903279, In the Third Judicial District, Salt Lake County, State of Utah.

*The Pavlec Family Partnership, L.P., v. Nationwide Mutual Insurance Company,* 4-14-cv-00477, United States District Court, Eastern District of Missouri.

*Eric LaFolette, et al, v. Liberty Mutual Fire Insurance Company,* 2-14-cv-04147, United States District Court, Western District of Missouri, Central Division.

*East Bridge Loft Property Owners Association, Inc., et al, v. Crum and Forster Specialty Insurance Company,* 2:14-CV-2567, United States District Court for the District of South Carolina, Charleston Division.

*Standby Technical Services, Inc., et al, v. F. & M. Agency, Inc., et al,* 14-cv-01857, United States District Court, District of Minnesota.

*Wayne J. Griffin Electric, Inc. v. Travelers Property Casualty Company of America,* 1:13-cv-00882, United States District Court, Middle District of North Carolina.

*F. H. Paschen, et al, v. Hiscox, Inc., et al,* 2:13-cv-05842, United States District Court, Eastern District of Louisiana.

*R. BRYAN TILDEN*          PAGE 10

<u>Liberty Mutual Fire Insurance Company</u> v. *The Clemons Coal Company, et al,* 2:14-cv-02332, United States District Court for the District of Kansas.

*Park Reserve, LLC v.* <u>Peerless Insurance Company, et al,</u> 4:14-00763, United States District Court for the Western District of Missouri, Western Division.

*APM, LLLP v.* <u>TCI Insurance Agency, Inc.,</u> 09-2014-CV-02885, District Court for the County of Cass, East Central Judicial District, North Dakota.

*Harbour Yacht Club and Marina, LLC and Harbour Yacht Club and marina Sales and Service v. North American Specialty Insurance Company and* <u>Liberty Insurance Services,</u> OCN-L-2737-13, Superior Court of New Jersey, Ocean County.

*Tensas Water Distribution Association v.* <u>Arch Insurance Company,</u> 3:14CV1787, United States District Court, Western District of Louisiana, Monroe Division.

## **EXHIBIT B**

All ACA health plans must cover the following list of preventive services without charging a copayment or coinsurance. This is true even if the yearly deductible has not been met.

1. Abdominal aortic aneurysm one-time screening for men of specified ages who have ever smoked

2. Alcohol misuse screening and counseling

3. Aspirin use to prevent cardiovascular disease for men and women of certain ages

4. Blood pressure screening

5. Cholesterol screening for adults of certain ages or at higher risk

6. Colorectal cancer screening for adults over 50

7. Depression screening

8. Diabetes (Type 2) screening for adults with high blood pressure

9. Diet counseling for adults at higher risk for chronic disease

10. Hepatitis B screening for people at high risk, including people from countries with 2% or more Hepatitis B prevalence, and U.S.-born people not vaccinated as infants and with at least one parent born in a region with 8% or more Hepatitis B prevalence.

11. Hepatitis C screening for adults at increased risk, and one time for everyone born 1945 – 1965

12. HIV screening for everyone ages 15 to 65, and other ages at increased risk

13. Immunization vaccines for adults — doses, recommended ages, and recommended populations vary:

    - Diphtheria

    - Hepatitis A

    - Hepatitis B

1

Exhibit B

- Herpes Zoster

- Human Papillomavirus (HPV)

- Influenza (flu shot)

- Measles

- Meningococcal

- Mumps

- Pertussis

- Pneumococcal

- Rubella

- Tetanus

- Varicella (Chickenpox)

14. Lung cancer screening for adults 55 - 80 at high risk for lung cancer because they're heavy smokers or have quit in the past 15 years

15. Obesity screening and counseling

16. Sexually transmitted infection (STI) prevention counseling for adults at higher risk

17. Syphilis screening for adults at higher risk

18. Tobacco Use screening for all adults and cessation interventions for tobacco users

Covered preventive services for women:

1. Breast cancer genetic test counseling (BRCA) for women at higher risk

2. Breast cancer mammography screenings every 1 to 2 years for women over 40

3. Breast cancer chemoprevention counseling for women at higher risk

4. Cervical cancer screening for sexually active women

5. Chlamydia infection screening for younger women and other women at higher risk

6. Domestic and interpersonal violence screening and counseling for all women

7. Gonorrhea screening for all women at higher risk

8. HIV screening and counseling for sexually active women

9. Human Papillomavirus (HPV) DNA test every 3 years for women with normal cytology results who are 30 or older

10. Osteoporosis screening for women over age 60 depending on risk factors

11. Rh incompatibility screening follow-up testing for women at higher risk

12. Sexually transmitted infections counseling for sexually active women

13. Syphilis screening for women at increased risk

14. Tobacco use screening and interventions

15. Well-woman visits to get recommended services for women under 65

Services for pregnant women or women who may become pregnant:

1. Anemia screening on a routine basis

2. Breastfeeding comprehensive support and counseling from trained providers, and access to breastfeeding supplies, for pregnant and nursing women

3. Contraception: Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling, as prescribed by a health care provider for women with reproductive capacity (not including abortifacient drugs). This does not apply to health plans sponsored by certain exempt "religious employers."

4. Folic acid supplements for women who may become pregnant

5. Gestational diabetes screening for women 24 to 28 weeks pregnant and those at high risk of developing gestational diabetes

6. Gonorrhea screening for all women at higher risk

3

7.  Hepatitis B screening for pregnant women at their first prenatal visit

8.  Rh Incompatibility screening for all pregnant women and follow-up testing for women at higher risk

9.  Syphilis screening

10. Expanded tobacco intervention and counseling for pregnant tobacco users

11. Urinary tract or other infection screening